IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FLETCHLINE, INC. and<br>FLETCHLINE ELECTRICAL<br>SERVICES, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>INVATA, LLC d/b/a INVATA<br>INTRALOGISTICS and JOHN DOES<br>1-5,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>    Case 2:23-cv-03295-MAK |

## REPORT OF RULE 26(f) MEETING

Under Federal Rule of Civil Procedure 26(f), this Court's August 30, 2023 Order, and this Court's Policies, counsel for Fletchline, Inc. ("Fletchline") and Fletchline Electrical Services, LLC ("FES") and Invata LLC ("Invata")[1] conferred on September 14, 2023, and submit the following report of their meeting for the Court's consideration at the initial pretrial conference on September 18, 2023:

    **1.**    **Discussion of specific claims, defenses, and relevant issues**

Plaintiffs' claims are based on two packaging/shipping logistics projects: one for Fanatics in Aberdeen, Maryland, and one for 47 Brand in East Bridgewater, Massachusetts. We reference these as the Fanatics Project and the 47 Brand Project.[2] Fletchline and FES were subcontractors of Invata. Fletchline performs mechanical work, and FES performs electrical work.

Invata disputes its liability to Fletchline, Fletchline's claim at Fanatics having been satisfied by a separate contract with Fanatics.  Invata avers it was overbilled by Fletchline significantly and that Fletchline engaged in false and fraudulent business activities, including false billings.  Invata avers that Fletchline employees routinely overbilled Invata for work allegedly performed. Invata further avers that the claims of Fletchline are not in accordance with its contractual obligations, and that any change orders are potentially fraudulent.

---

[1] The parties did not include any John Doe individuals or entities, in that they are unknown at this time.
[2] The record owner of the East Bridgewater, Massachusetts project is a '47 Brand affiliated holding company called 140 Laurel Street Owner, LLC. Relevant to this dispute, we refer to 140 Laurel Street Owner, LLC as 47 Brand.

A. <u>Fanatics Project</u>

For the Fanatics Project, Fletchline bid a total of $1,009,583.00 on a firm-fixed-price ("FFP") basis [INVATA 00172]. The bid made clear that overtime, extra resources, and change order work would be invoiced separately on a time and materials ("T&M") basis. FES bid $1,957,906 with similar terms [INVATA 00078]. Invata issued Purchase Order T220310 to Fletchline for $1,509,583, which included the bid amounts plus $500,000 allocated to T&M work [INVATA 00175]. Invata issued Purchase Order T220120 for $1,957,906 [INVATA 00081]. Extra work authorization ("EWA") forms were submitted on several occasions totaling $262,774. Invata paid a total of $208,825.55 on the invoices, leaving a balance of $1,859,795.55. Invata disputes that Fletchline complied with its contractual obligations or obtained change orders for the work claimed.

The bulk of the dispute on the Fanatics Project is FES Invoice 2715 for $262,774, containing unpaid EWAs. This invoice was for support work, changes directed by Fanatics and Invata, and costs caused by schedule delays (all noted in the bid to be invoiced separately on a T&M basis). Prior to the October 6, 2022 invoice date, FES repeatedly asked Invata to issue a purchase order for this extra work, which Invata would not do despite knowing the work needed to be performed and accepting same. FES then went ahead and sent the invoice for the work performed. Invata disputes the entirety of this invoice as well as punch list items and chargebacks claimed by Invata.

In October 2022, Fletchline and FES separately sent notice to Fanatics, the lessor of the property, and Northwestern Mutual Life Insurance Company, the owner, of their intentions to claim a lien against the property. Fanatics then became involved as a lien claim by one of the subcontractors on the project would have caused a default under Fanatics' lease with Northwestern Mutual. After negotiations between Fletchline/FES and Invata failed, Fanatics made a payment to Fletchline and FES of $1,500,000 in exchange for Fletchline/FES' promise not to file a lien against the property. Fletchline and FES maintain that the contract balance is still owed despite Fletchline and FES releasing the security granted to them under Maryland law. Invata disputes this position.

B. <u>47 Brand Project</u>

For the 47 Brand Project, only FES is involved. Invata issued Purchase Order T220230 for $295,265 plus optional support at $770 for a total of $296,035. FES submitted six invoices and one EWA totaling $280,669.50. FES maintains that it fully performed without any issues. In its counterclaim, Invata has raised nonspecific quality issues with the 47 Brand Project that have not been raised before.

The significant issue beyond Invata's lack of payment of the earned $280,669.50 is, as FES contends, that Invata defrauded 47 Brand into releasing payment to it on the false promise that it would pay FES to prevent FES's lien from attaching to 47 Brand's property. FES contends that 47 Brand's general counsel confirmed that the company only released the payment based on the representation that Invata would pay FES. A subpoena will be issued to 47 Brand to obtain documents and testimony to confirm these facts. FES contends that this will entitle it to extra-contractual damages. Invata disputes that any false or fraudulent

statement was made to anyone relating to the 47 Brand matter, or that it induced any action or forbearance by Fletchline.

**Discussion**:

As noted above, the discovery regarding the Fanatics Project will focus on the extra work invoiced by Fletchline and FES and the chargebacks claimed by Invata. The parties anticipate an early and robust disposition of undisputed facts.

Invata's claims center on the unprofessional and incomplete performance by Fletchline/FES and their fraudulent billing practices that inflated Invata's claimed obligations. In addition, Fletchline/FES failed to perform the work in a workmanlike fashion.

On the 47 Brand Project, discovery will focus on the communications between Invata and 47 Brand regarding the release of the retention and the inducing promise that FES would be paid from same. In this matter, Invata again contends that Fletchline overbilled and performed its alleged work without proper contractual authority.

2. **Stipulated facts and insurance coverage and deductibles**

Pursuant to FRCP 26(f) and this Court's Policies, and for the sake of early efficiency and narrowing the perceived facts in dispute prior to the completion of formal discovery, the parties by and through their respective counsel, submit the following Stipulation of Facts, for this case only:

1. Plaintiff Fletchline, Inc. (Fletchline") is a Tennessee corporation with its principal place of business at 5480 Lakeview Road, Springfield, Robertson County, Tennessee.

2. Fletchline is a citizen of Tennessee.

3. Plaintiff Fletchline Electrical Services, LLC, ("FES") is a Tennessee limited liability company formed under the laws of the State of Tennessee with its principal office located at 5480 Lakeview Road, Springfield, TN 37172.

4. FES' members are Fletchline and Lyons Head Holdings, LLC.

5. Lyons Head Holdings, LLC is a limited liability company whose members are citizens of Florida.

6. Because FES' members are citizens of Tennessee and Florida, FES is a citizen of Tennessee and Florida.

7. Defendant Invata LLC d/b/a Invata Intralogistics ("Invata") is a limited liability company formed under the laws of Pennsylvania with its principal place of business located at 1010 Spring Mill Avenue, Conshohocken, Pennsylvania 19428.

8. Invata's sole member is Invata Intermediate, LLC.

9. Invata Intermediate, LLC's members are Invata Holdings, Inc., Ayman Labib, Greg Taylor, and Ron Adams.

10. Invata Holdings, Inc. is a Pennsylvania corporation with a principal place of business located at 1010 Spring Mill Avenue, Suite 300, Conshohocken, Pennsylvania 19428.

11. Ayman Labib, a natural person and citizen of the Commonwealth of Massachusetts, permanently residing at 111 Grant Street, Lexington, MA 02420.

12. Greg Taylor, a natural person and citizen of the Commonwealth of Massachusetts, permanently residing at 1 Lake Avenue, Unit A, North Attleboro, MA 02760.

13. Ron Adams, a natural person and citizen of the Commonwealth of Massachusetts, permanently residing at 22 Sunset Lane, Hingham, MA 02043.

14. Because Invata's members are citizens of Pennsylvania and Massachusetts, Invata is a citizen of Pennsylvania and Massachusetts.

15. On February 17, 2023, Plaintiffs filed a Complaint for breach of contract and other causes of action against Defendant Invata and Defendant John Does 1-5 in the United States District Court for the Middle District of Tennessee.

16. On August 8, 2023, Plaintiffs filed an Amended Complaint for breach of contract and other causes of action against Defendant Invata and Defendant John Does 1-5 in the United States District Court for the Eastern District of Pennsylvania.

17. On September 12, 2023, Defendant Invata filed its Answer with Affirmative Defenses and Counterclaims to the Amended Complaint of Plaintiffs in the United States District Court for the Eastern District of Pennsylvania.

18. Plaintiffs Fletchline and FES and Defendant Invata are completely diverse.

19. Venue is proper in this Court.

20. At all times relevant to this action, Fletchline and FES were in the business of performing mechanical and electrical work involving material handling and conveyor systems.

21. Invata entered into contracts with Fletchline and FES.

22. Prior to October 21, 2021, Invata contacted Fletchline and FES representatives to discuss performing work on a project in Aberdeen, Maryland, for a distribution facility for sports apparel and merchandise company Fanatics (the "Fanatics Project").

23. Fletchline and FES were contracted to perform work on the Fanatics Project.

24. Fletchline and FES both performed work on the Fanatics Project as subcontractors of Invata.

25. An authorized agent of Invata was acting within the scope of their responsibilities

and authority when they entered into the contract with Fletchline and FES on the Fanatics Project.

26. An authorized agent of Fletchline was acting within the scope of their responsibilities and authority when they entered into the contract with Invata on the Fanatics Project.

27. An authorized agent of FES was acting within the scope of their responsibilities and authority when they entered into the contract with Invata on the Fanatics Project.

28. In conjunction with the Fanatics Project, Fletchline and FES received purchase orders and change orders from Invata.

29. Fletchline and FES invoiced Invata for work they claimed they performed on the Fanatics Project.

30. Prior to April 13, 2022, Invata contacted FES to discuss FES performing work on a project in East Bridgewater, Massachusetts, for a distribution facility for sports apparel and merchandise company 47 Brand (the "47 Brand Project").

31. FES was contracted to perform work on the 47 Brand Project.

32. FES performed work on the 47 Brand Project as a subcontractor of Invata.

33. An authorized agent of Invata was acting within the scope of their responsibilities and authority, when they entered into the contract with FES on the 47 Brand Project.

34. An authorized agent of FES was acting within the scope of their responsibilities and authority when they entered into the contract with Invata on the 47 Brand Project.

35. In conjunction with the 47 Brand Project, FES performed work on the 47 Brand Project.

36. FES invoiced Invata for the work they allege to have completed on the 47 Brand Project.

37. Invata communicated to Fletchline and FES that it perceived there to be numerous issues with the work done by Fletchline and FES on the Fanatics Project including but not limited to wiring being done incorrectly and wiring not being up to Invata's wiring specifications.

38. Invata sent Fletchline and FES images and punch lists of items on the Fanatics Project that it believed needed to be fixed or reworked.

39. In February of 2023, Fletchline and FES received payment directly from Fanatics, LLC ("Fanatics") in the amount of $1,500,000.00.

In addition to the above stipulated facts, the parties have identified the following

categories of material facts that will be targeted to determine what can be stipulated and what is genuinely at issue. Counsel understand and agree that discovery will focus on these issues and that nonmaterial facts will not be given attention in written discovery or depositions.

    i. Creating a joint timeline of owner requests for proposal and the like, including owner plans and specifications, submission of bids, submission of purchase orders, submission of invoices, and chargebacks;

    ii. Confirm which bids, purchase orders, invoices, change orders/EWAs are operative, including the stipulation that amended/supplanted contract documents control over previous, non-operative versions;

    iii. Owner complaints/approvals/sign-offs; and

    iv. Building/electrical code certifications/approvals/sign-offs.

At this time, there does not appear to be available insurance for these purely contractual and fraud-based claims.

    **3.**    **Informal disclosures**

The parties contemplate and encourage informal disclosures on an ongoing basis.

    **4.**    **Formal discovery**

Required initial disclosures are completed. No discovery phasing is necessary. The Fletchline discovery will focus on exchange of invoice and chargeback support documents as well as depositions of relevant witnesses. Depositions will be largely if not exclusively by remote means.

Invata's discovery will focus on the unprofessional incomplete and unworkmanlike performance by Fletchline, on Invata's claims of fraud in the billing process, and lack of contractual authority for charges.

The parties request the entry of a Rule 502(d) Order.

    **5.**    **Electronic discovery**

The parties do not anticipate extraordinary challenges with any e-discovery matters, except for Invata's confidentiality concerns explained below.

Regarding format, the parties agree to produce responsive, non-privileged documents in searchable PDF or TIFF format with associated metadata. The parties agree to supply native files, where available, upon reasonable request where relevant, *e.g.*, photographs (to confirm image metadata), CAD/drawing files, spreadsheets, and the like. Costs of native production will be born the producing party provided that the request for native files is targeted to specific documents whose metadata is relevant to the dispute.

Invata has substantial electronic discovery concerns relating to its software, which is not discoverable, and appropriate limits will be taken to ensure protection of Invata's technology, all for which is protected IP, confidential, and a trade secret. Specifically, the parties have identified potential issues regarding proprietary software being required to view CAD/drawing files, including some plans and specification documents. The parties will go forward to work through these issues. Invata will not voluntarily produce drawings, specifications, spreadsheets, and other confidential materials absent an appropriate confidentiality order. The parties will undertake immediately to negotiate an agreed protective order. Invata reserves all rights to confidentiality. In addition, certain aspects of the arbitration between Invata and Fanatics are confidential and will not be produced in this case absent order of court. Orders compelling production may be required. Invata will begin working on obtaining and sharing the order(s) from AAA on confidentiality of the Invata-Fanatics arbitration.

Regarding searches, if the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. The parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (*e.g.*, time frames, fields, document types).

Regarding privilege, electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production. All copies shall be returned or destroyed by the receiving party.

6. **Expert witness disclosures**

Plaintiffs do not anticipate offering any expert opinions, but reserve the right to do so and to offer rebuttal expert opinions to Invata's experts, if any.

Invata has not yet retained experts but reserves the right to do so. The experts would be in the field of construction billing, and potentially an electrical contractor. Any such expert would provide reports in accordance with the Rules of this Court.

7. **Settlement or resolution**

The parties had robust settlement discussions prior to filing suit. Invata went as high as $1,880,000 for both projects, equating to $1,600,000 for Fanatics and $280,000 on 47 Brand. Note that Invata never offered to use its own funds to pay Fletchline or FES, but rather involved Fanatics such that Fanatics would make a payment directly to Fletchline/FES. Fletchline/FES had already sent lien notices to Fanatics, and so Fanatics chose to be involved to resolve the lien claim. Separate from the consolidated offer, Invata offered up to $1,549,960 for the Fanatics Project. Fletchline and FES offered to accept no less than $1,700,000 on the Fanatics Project only. Setting the previous unsuccessful offers aside, the parties face an

approximate $360,000 principal difference on the Fanatics Project. Invata expects a more robust discussion of the payment by Fanatics, confirmed in the AAA arbitration, and disputes Fletchline's claim to payment for these alleged services.

Regarding the 47 Brand Project, the owner has never raised any quality issues, and Invata did not raise any such claims until its September 12, 2023 Counterclaim, and even there the claims are stated as conclusions, not facts. FES has still not received any legitimate basis to discount the approximately $280,000 principal owed on the 47 Brand Project.

Mediation could be fruitful after subpoenas to Fanatics and 47 Brand are responded to and after additional discovery regarding the invoices and chargebacks, perhaps in early December. Confidentiality of the AAA arbitration between Invata and Fanatics, specifically Fanatics' desire to keep the AAA proceedings and all information exchanged therein confidential, may prevent discovery from being completed in the desired timeframe, and therefore may also prevent fruitful mediation prior to the end of the calendar year. Fletchline/FES may have to seek relief from the AAA order of confidentiality.

Invata will participate in mediation but only after discovery from Fletchline reveals the claims of Invata and Fletchline's fraudulent behavior.

Invata's ability to pay is a concern for Fletchline and FES.

### 8. Trial

While the parties' counsel do not have calendar conflicts for a trial of this matter to occur in the first quarter of 2024, Invata's counsel does not believe trial can be achieved in that timeframe because of the substantial issues regarding software/trade secret confidentiality, proprietary software access, and the restrictions against access to and sharing of information from the Invata-Fanatics arbitration.

### 9. Referral to Magistrate Judge

Invata consents to the referral to a Magistrate Judge. Fletchline/FES do not.

### 10. Other matters

None at this time.

/s/ Nils Burton Snell  
(Counsel for Plaintiffs)


/s/ Edmond M. George  
(Counsel for Defendant)